IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-01005-RBJ-KMT

TROY ANDERSON,

Plaintiff,

v.

STATE OF COLORADO, DEPARTMENT OF CORRECTIONS,
SUSAN JONES, in her official capacity as warden of the Colorado State Penitentiary, and
ARISTEDES W. ZAVARAS, in his official capacity as the Executive Director of the Colorado
Department of Corrections,

Defendants.

---

## ORDER

---

      This civil rights case is set for a trial to the Court commencing April 30, 2012.  Four

motions are pending, one of which [#77] is not yet ripe but will be mentioned briefly at the end

of this order.  This order addresses the other pending motions: plaintiff's motion for partial

summary judgment on his Fourth Claim in which he asserts that defendants have violated his

Eighth Amendment right to be free of cruel and unusual punishment by depriving him of any

outdoor exercise [#47]; defendants' motion for summary judgment on all claims [#48]; and

plaintiff's motion to reopen discovery for a limited purpose [#65].

### FACTS.[1]

      Mr. Anderson is an inmate in the Colorado Department of Corrections, also known as

CDOC.  For more than 11 years, with the exception of a one-month period in 2001 when he was

---

[1] The parties have filed some 50 pages of disputed and undisputed facts as well as nearly 1700 total pages of
pleadings and exhibits for the three motions addressed in this order.  For future reference, more concise briefs,
recognition of fact disputes, and even better proofreading in some instances would make for better advocacy.

sent to another facility for a mental health evaluation, he has been incarcerated at the Colorado State Penitentiary.  This is a maximum security facility where each inmate is placed in administrative segregation, sometimes called "Ad Seg."  Mr. Anderson is confined alone in a small cell at all times except for approximately five visits each week of about one to one and one quarter hours each when he is taken to a similarly small cell with a pull-up bar for exercise followed by a shower.  He has essentially no direct human contact except with CDOC staff.

Although his lengthy Complaint described a long list of issues, the gist of this case can fairly be divided into three separate but related complaints.  First, he alleges that he has been denied appropriate diagnosis and treatment for serious mental health issues.  Second, because the Colorado State Penitentiary provides no facility for outside exercise, he has not seen the sun or the outside world for more than eleven years, resulting in physical and mental harm.  Third, although inmates theoretically can earn their way out of the Colorado State Penitentiary by successfully completing a five-level Quality of Life Level Program ("QLLP"), he has been unable to do so because of an arbitrary demerit system that in turn punishes his improperly treated mental illness.

Mr. Anderson asserts six claims: (1) that he has been deprived of a liberty interest without the due process guaranteed by the Fourteenth Amendment by the manner in which defendants have administered demerits, called "negative chrons," that has prevented him from progressing to higher levels and ultimately out of Ad Seg; (2) that he has been deprived of a liberty interest without due process by reason of defendants' failure to provide an appropriate medication request and review procedure and, therefore, necessary medications; (3) that defendants' failure to provide appropriate mental health treatment has also violated his Eighth (and Fourteenth) Amendment right to be free of cruel and unusual punishment; (4) that

defendant's denial of outdoor exercise over the period of time Mr. Anderson has been in Ad Seg violates his Eighth (and Fourteenth) Amendment right to be free of cruel and unusual punishment due to defendants' denial of outdoor exercise; (5) that discrimination on the basis of his mental impairment violates the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; and (6) such discrimination also violates the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978 ("Rehabilitation Act"), 29 U.S.C. § 794 et seq.

## CONCLUSIONS.

### A.  Plaintiff's Motion for Partial Summary Judgment [#47].

Plaintiff seeks a summary judgment that denial of outdoor exercise for more than 11 years violates his right to be free of cruel and unusual punishment.  The Eighth Amendment applies to state action through the due process clause of the Fourteenth Amendment.  To establish that a condition of confinement constitutes cruel and unusual punishment, an inmate must show both an objective component, i.e., that a prison deprivation was sufficiently serious (such as by denying the minimal civilized measure of life necessities) and a subjective component, i.e., that prison officials acted with a culpable state of mind (some form of wanton conduct at least amounting to deliberate indifference as compared to inadvertence or good faith error).  *Wilson v. Seiter*, 501 U.S. 294, 298-304(1991).  To obtain summary judgment, plaintiff must show that it is beyond any genuine dispute of fact that he has been subjected to cruel and unusual punishment.  Fed. R. Civ. P. 56(a).

The Tenth Circuit has on occasion addressed prisoner demands for outdoor exercise.  In one case it noted that "[t]here is substantial agreement among the cases in this area that some form of outdoor exercise is extremely important to the psychological and physical well being of

inmates, and some courts have held a denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). To my knowledge, however, no court has held that denial of fresh air and exercise is a per se Eighth Amendment violation. It depends on the facts of the particular case.

In *Ajaj v. U.S.*, 293 F. App'x 575 (10th Cir. 2008)(unpublished) the court considered allegations that the inmate had been prevented from exercising outside during his first year at the Administrate Maximum United States Penitentiary in Florence, Colorado and intermittently thereafter. Those allegations did not rise to the level of an Eighth Amendment violation. *Id*. at 584. However, "a factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that DOC officials disregarded that risk by keeping [the inmate] in administrative segregation." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006).

Plaintiff contends that virtually all other federal and state prisons in the country, including the most secure institutions, provide an outdoor exercise facility; that prison experts agree that this is appropriate and important; that the Colorado State Penitentiary has an outdoor courtyard that was designed for outdoor recreation but is used for storage; that the Penitentiary also has substantial open space where an outdoor recreation area could be located; that, particularly due to the length of his deprivation of such exercise, Mr. Anderson has sustained both physical and mental harm; and that CDOC's continued failure and refusal to make outdoor exercise available to him constitutes deliberate indifference.

Defendants respond that Mr. Anderson is able to exercise indoors, and that he has not shown that the inability to exercise outdoors causes physical or mental harm. Defendants argue that providing daily outdoor exercise to approximately 750 offenders (a request that Mr.

Anderson does not appear to be making) is not feasible; that giving Mr. Anderson but not others the opportunity for outdoor exercise (another request that plaintiff does not appear to be making) would create management and security problems; that the QLLP program is designed to motivate inmates to cooperate and behave so as to progress to a higher level; and that the Court should defer to the broad discretion of prison administrators to manage prisons safely and effectively.

The Court finds that these issues are replete with factual disputes. Indeed, it is all but inconceivable to this Court that a matter of such potentially great significance both to the CDOC and to inmates at the Colorado State Penitentiary would be decided on summary judgment without a full evidentiary record. Plaintiff's motion is denied.

**B. [Defendants'] Motion for Summary Judgment [#48].**

Defendants advance seven arguments, collectively amounting to the allegation that none of plaintiff's claims turn on genuine disputes of material fact, and that all of the claims should be dismissed as a matter of law.

1. Statute of limitations**.**

Defendants argue that any claim accruing before May 3, 2008 (two years before this case was filed) is barred by the applicable statute of limitations. Defendants made the same argument in their motion to dismiss filed and briefed earlier in this case. The Court, by Chief Judge Daniel, denied the motion. The Court concluded that the period of limitations applicable to the claims brought pursuant to 42 U.S.C. § 1983 (One through Four) is two years from the date that Mr. Anderson knew or should have known of the injury that was the basis for the claim. [#37] at 4-5. Similarly, the period of limitation applicable to the two statutory claims (Five and Six) is two years from the date when he knew of should have known of the cause of his injuries. *Id.* at

5-6.  The Court held that, although claims accruing prior to May 3, 2008 might be barred, it could not determine from the face of the Complaint that any of the claims are barred.  *Id.* at 6-8.

In the pending motion for summary judgment, defendants focus only on plaintiff's Second Claim, and specifically on the allegation that Mr. Anderson was improperly denied two medications, Strattera and Wellbutrin, that had been prescribed for him.  Defendants note, as they did in their motion to dismiss, that Mr. Anderson alleged that he was denied Strattera by the formulary board at the Colorado State Penitentiary on July 15, 2004, and the board denied Wellbutrin in April 2007.  The Court found it to be unclear from the face of the Complaint when the internal appeal process was complete or whether Mr. Anderson continues to appeal the denials of those medications.  [#37] at 7.  Defendants now present the affidavit of Darren Lish, M.D., a staff psychiatrist at the CDOC, who states that no appeal was taken from the denial of Wellbutrin.  *Id.* ¶20.  Defendants also point to plaintiff's allegation that he did not have a right to appeal and did not appeal.

Plaintiff responds that he grieved the denial of Wellbutrin, the only avenue available to him, and that the grievance was finally denied on August 7, 2008.  Ex. 19 to Robertson aff. [#50-3] at 12.  Defendants respond that Mr. Anderson knew or should have known of his injury when Wellbutrin was denied, not when his grievance process concluded.

It does not appear that plaintiff now disputes that his claim arising from the 2004 denial of Strattera is time barred.  I agree with the plaintiff, however, that because there was a form of "appeal" by way of the grievance procedure, his filing of a Complaint based on the denial of Wellbutrin was timely.  Accordingly, the motion for summary judgment based upon the statute of limitations is granted as to the Strattera denial but is otherwise denied.

2. <u>Change in Prison Policy</u>**.**

Defendants next argue that plaintiff was prescribed Wellbutrin and provided it in December and, therefore that his claim based on the denial of Wellbutrin is moot. A case becomes moot and must be dismissed where the underlying controversy is resolved, and the court "cannot affect the matter in issue in the case before it." *Church of Scientology of California v. U.S.*, 506 U.S. 9, 12 (1992). However, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

The prescription of Wellbutrin in December 2010 does not moot a claim that its previous denial was improper. Moreover, the previous denial was apparently based on the drug's not being on the "formulary." A doctor's non-formulary prescription of Wellbutrin was denied. The drug apparently is now on the formulary. However, whether that was simply a temporary change, and whether Mr. Anderson will continue to be given the drug if prescribed by a physician, are issues of fact that cannot be resolved on a motion for summary judgment.

3. <u>Prison Litigation Reform Act</u>.

Defendant points out that, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Defendants argue that this bars plaintiff's claim for compensatory damages under the Rehabilitation Act, because plaintiff has not alleged that he sustained physical injuries. Plaintiff does not dispute that the Prison Litigation Reform Act applies to his claims under the Rehabilitation Act (and the ADA). However, he submits an affidavit in which he

states that the lack of outdoor exercise has caused his muscles to grow weaker.  [#47-2] ¶73.

That is sufficient to create a fact dispute that prevents summary disposition.

     4.  Plaintiff's Due Process Claims (Claims One and Two)**.**

     Defendants argue that plaintiff has not shown that the periodic reviews regarding his

classification status in the QLLP or the process for obtaining non-formulary medications involve

a liberty interest that could support a due process claim.

     To state a procedural due process claim, a plaintiff must establish: (1) that he has a liberty

or property interest protected by the due process clause, and (2) that the procedures utilized were

inadequate under the circumstances.  *See Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir.

2001).  Plaintiff must demonstrate a "legitimate claim of entitlement" to the right asserted in the

Complaint.  *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989).

     The issue with respect to the periodic reviews was addressed in *Toevs v. Reid,* 646 F.3d

752 (10th Cir. 2011).  The court concluded on the record before it that an inmate's indefinite

placement in the QLLP at the Colorado State Penitentiary that actually lasted for years, in the

type of conditions described by Mr. Toevs (similar to those described by Mr. Anderson),

established a protected liberty interest; and that because Mr. Toevs did not receive periodic

reviews that provided meaningful guidance as to how he was progressing or when he might be

returned to the general population, his constitutional rights were violated.  *Id.* at 753, 756-60.

Whether the facts of the present case are sufficiently different to warrant a different conclusion is

an issue that is inappropriate for summary judgment.

     With regard to his claim based on the review process for non-formulary medications,

plaintiff argues that no reasons were given for the original denial, and that he was not permitted

directly to appeal the denial.  He alleges that there are not meaningful or sufficient procedural

protections, and that they leave open the possibility of decisions that are arbitrary or based on bias, discrimination or prejudice.  He further argues that CDOC's denial of his non-formulary medications without adequate process "imposes an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.

The Court finds that CDOC's denial of his non-formulary medication could impose the type of hardship warned of in *Sandin* if Mr. Anderson can show that a primary reason he has not progressed out of Ad Seg is because his mental illness has been improperly and inadequately treated due to the non-formulary request and appeal procedures.  The Court finds there is a genuine fact dispute about whether that occurred here.

5.  <u>Plaintiff's Eighth Amendment Claim Relating to the Adequacy of his Mental Health Treatment</u>**.**

Defendants argue that plaintiff cannot establish an Eighth Amendment violation on the basis of inadequate mental health treatment.  As defendants acknowledge, the Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)(internal citations omitted).  Plaintiff must establish two elements: objectively that his medical need is sufficiently serious, and subjectively that the defendant "knew of and disregarded an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)(internal citations omitted). Because defendants concede, at least for purposes of the present order, that Mr. Anderson's mental health condition is sufficiently serious to satisfy the first element, the Court will focus on whether there is a genuine issue of material fact with regard to the second element.

A defendant is deliberately indifferent where he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [drew] the inference." *Ibid.* Delaying medical treatment can violate the Eighth Amendment if the delay itself "reflect[s] deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). The Tenth Circuit has defined substantial harm to mean a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001).

It is not disputed that plaintiff has not received certain medications prescribed by physicians for the treatment of his mental illness. The significance of his not receiving those medications is a matter of medical judgment and testimony. The Court agrees with defendants that a difference in medical judgment is not sufficient to establish an Eighth Amendment violation. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)(stating "[t]he prisoner's right is to medical care- not to the type or scope of medical care which he personally desires."). However, that does not foreclose the possibility that medical or mental health treatment will be so inadequate that it will rise to the level of an Eighth Amendment violation. The Court concludes that plaintiff has raised a genuine issue of material fact as to whether defendants were deliberately indifferent to his mental health issues.

6. <u>Plaintiff's Eighth Amendment Claim for the Denial of Outdoor Exercise</u>.

For the reasons stated above in regard to plaintiff's motion for partial summary judgment, defendants' motion is denied. Genuine issues of material fact exist as to whether the deprivation was sufficiently serious and whether the defendants acted intentionally or with deliberate indifference. *Wilson*, 501 U.S. at 298-99.

7.  Plaintiff's ADA and Rehabilitation Act Claims.[2]

The ADA prohibits discrimination by public entities on the basis of disability.  The

Rehabilitation Act prohibits such discrimination by recipients of federal funding.  To state a

claim under the ADA (and the Rehabilitation Act) a "plaintiff must allege that: (1) he is a

qualified individual with a disability, (2) who was excluded from participation in or denied the

benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of

benefits, or discrimination was by reason of a disability."  *Robertson v. Las Animas County*

*Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

Plaintiff alleges, and it is not disputed for present purposes, that he suffers from a mental

impairment that rises to the level of a disability.  He has not received the benefit of completion of

the QLLP.  He contends that this is because of CDOC's refusal to provide reasonable

accommodation in the form of necessary medication and treatment.  The ADA and the

Rehabilitation Act do not provide a private right of action for substandard medical care.

*Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134, 1144 (10th Cir. 2005).  In other

words, these statutes do not create a federal remedy for medical malpractice.  However, that is

not the gist of plaintiff's claim.  Rather, he argues that he was unable successfully to complete

the QLLP because of his mental impairment and that, despite doctors' prescription of drugs that

would have treated the mental impairment and would have enabled him to progress through the

program, CDOC prevented him from obtaining the drugs.  Defendants argue that he has been

fully accommodated, citing Dr. Lish's affidavit [#48-2] at ¶50.  Dr. Lish states, in conclusory

language perhaps drafted by others, that "Mr. Anderson has received appropriate, timely

treatment by his treating clinicians and treating psychiatrists while he has been incarcerated with

_____

[2] "The Rehabilitation Act is materially identical to and the model for the ADA," the elements are the same except
that the Rehabilitation Act requires that defendant receive federal funds.  *Crawford v. Indiana Dep't of Corrections*,
115 F.3d 481, 483 (7th Cir. 1997).

the CDOC. *Ibid.* Plaintiff responds by citing, among other things, the affidavit of Raymond Patterson, M.D., who states that Mr. Anderson has not received adequate treatment. This fact dispute is sufficient to deny summary resolution of the issue without the need to look further.

### C. Plaintiff's Motion to Reopen Discovery for a Limited Purpose [#65].

Plaintiff wishes to reopen discovery to depose Dr. Erin Lenocker, someone who has had "interactions" with Mr. Anderson and is listed as a witness by defendants, and Dr. Vicki Tuakoi, Mr. Anderson's new mental health provider.

1. Deposition of Dr. Lenocker.

Dr. Lenocker was not identified in defendants' initial disclosures as a person with knowledge. However, she was disclosed during the course of discovery when defendants supplemented their initial disclosures with an incident report on which plaintiff relied in taking the deposition of Dr. Lampela. Defendants also relied on the incident report, written by Dr. Lenocker, in their Motion for Summary Judgment. Counsel states that Dr. Lenocker has been listed on defendants' "may call" list, and because counsel does not know what she will say, plaintiff is prejudiced to the point that a deposition should be permitted or the witness should be stricken.

It is disappointing to the Court that counsel have not been able or willing to resolve this relatively minor dispute by agreement. In any event, I do not agree with the premise that just because a lawyer does not know precisely what a potential witness will say, a deposition is necessarily critical. That kind of thinking is one thing that has contributed to the high if not outrageous cost of civil litigation in the modern era. It does not appear to the Court that Dr. Lenocker is a major player in this drama. It does appear that plaintiff's counsel already know a fair amount about where she fits into it. Yes, defendants probably should have listed her in its

disclosures.  Nevertheless, we are well past the discovery cutoff, trial is approaching, and it is time for the lawyers to devote their attention to finding the forest in the vast expanse of trees that have been developed and written about in the various motions.  The request to reopen discovery for a deposition of Dr. Lenocker is denied.  The Court orders that if defendants elect to call Dr. Lenocker as a witness, they should make her available to one of the plaintiff's lawyers for a brief interview "in the hall" before she is called.

2.  Deposition of Dr. Tuakoi.

Plaintiff argues and defendant does not dispute that Mr. Anderson's mental health treatment has changed at least somewhat since the close of discovery.  Although Dr. Tuakoi does not appear on either party's witness list, she apparently is Mr. Anderson's current mental health provider and might be in the best position to provide an update.  This information might be particularly relevant to plaintiff's request for injunctive relief.  Plaintiff's attorneys state that they only recently learned of Dr. Tuakoi's involvement through defendants' supplementation of plaintiff's mental health records.  Defendants respond that the request to depose Dr. Tuakoi was made six months after Mr. Anderson himself was being treated by her.  However, I am not sure Mr. Anderson is a reliable source of current treatment information for his attorneys.

Defendants have not shown that they would be prejudiced beyond the obvious time and expense that one more deposition would require.  In the circumstances the Court orders that defendants make Dr. Tuakoi available for a deposition limited to one hour, exclusive of any cross examination by defense counsel.  The lawyers should exercise their best efforts to pick a time and place that accommodate Dr. Tuakoi's schedule.  The deposition may be taken by telephone if both parties agree.

**ORDER.**

1.  Plaintiff's motion for partial summary judgment [Doc. # 47] is DENIED.

2.  Defendants' motion for summary judgment [Doc. # 48] is GRANTED IN PART (as to denial of Strattera in 2004) AND DENIED IN PART (in all other respects).

3.  Plaintiff's motion to reopen discovery [Doc. #65] is GRANTED IN PART (regarding a one-hour deposition of Dr. Tuakoi) AND DENIED IN PART (regarding the request to depose Dr. Lenocker).

4.  The Court does not address plaintiff's motion in limine concerning the admissibility of portions of depositions of defendants' employees and experts [#77].  However, the Court directs counsel to confer again, before the trial preparation conference, concerning these designations, bearing in mind (1) that the Court expects counsel reasonably to accommodate reasonable requests of opposing counsel, but (2) the Court generally prefers live testimony to deposition transcripts.

DATED this 26th day of March, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge