IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-01005-RBJ-KMT

TROY ANDERSON,

Plaintiff,

v.

STATE OF COLORADO, DEPARTMENT OF CORRECTIONS, et al,

Defendants.

## ORDER

This case is back before this Court on plaintiff's Motion for Enforcement of Judgment and Further Relief or, in the Alternative, for Hearing on Order to Show Cause, filed September 12, 2014. ECF No. 178. After various extensions of time were granted to facilitate a possible negotiated resolution of the present dispute, the defendants responded in opposition to the motion on December 3, 2014. ECF No. 185. That was followed by an additional brief and supplement filed by the plaintiff. ECF Nos. 186 and 187, the latter filed on January 26, 2015. The Court apologizes to the parties for not turning to this matter more promptly. Having now read and studied the parties' papers, and for the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

<u>Trial and Judgment</u>. The history of Troy Anderson's incarceration in the Colorado Department of Corrections and the specific complaints that gave rise to this lawsuit are summarized in this Court's Final Order and Judgment issued on August 24, 2012. Briefly, for the last 12 years Mr. Anderson had been housed in "administrative segregation" in the Colorado

State Penitentiary, the most restrictive custody level within the CDOC. He spent 23 to 24 hours a day alone in a small cell. He was supposed to be taken from his cell to an "exercise" room five times each week. The exercise rooms, similarly small and empty except for a chin-up bar, had open windows covered by metal grates that contained quarter-sized holes through which Mr. Anderson could see outside and sometimes feel a breeze or the warmth of the sun. There was no opportunity for outdoor exercise or indeed being outdoors at all during the 12 years preceding the trial in this case.

Mr. Anderson complained in this case of unconstitutional treatment in three areas: (1) the denial of any opportunity for outdoor exercise; (2) inadequate mental health treatment; and (3) the application of an arbitrary demerit system that kept him from progressing out of administrative segregation. Following a seven-day bench trial the Court found that the extended denial of outdoor exercise was a violation of the Eighth Amendment's prohibition of cruel and unusual punishment and ordered the CDOC to develop, within 60 days,

> a plan that ensures that Troy Anderson has access for at least one hour, at least three times per week, to outdoor exercise in an area that is fully outside and that includes overhead access to the elements, e.g., to sunlight, rain, snow and wind, unless inclement weather or disciplinary needs make that impossible.

ECF No. 109 at 38-39.

The Court found in favor of the defendants on Mr. Anderson's claim regarding mental health treatment. It found that it was not in a position to second-guess the medical judgment of his physicians with respect to medication prescribed for him, and that the systems in place at the Colorado State Penitentiary, particularly its Offenders with Mental Illness or "OMI" program, offered constitutionally adequate opportunities for multidisciplinary mental health treatment. The Court did order, however, that defendants assign a CDOC physician without previous contact with Mr. Anderson to take a fresh look at his medication and treatment needs. *Id.* at 39.

With respect to the demerit or "chronological reporting" system, the Court noted that the CDOC was studying potentially significant changes to that system even while the trial was in progress and left the record open for a little over two additional weeks so that the parties could address the anticipated revisions to Administrative Regulation 650-03. After reviewing the new regulation, the Court found that it appeared to reflect "a significant effort by the CDOC to improve the evaluation and review policies for administrative segregation inmates." *Id.* at 38. The Court concluded that the new policies deserved to be given a chance, and therefore resolved that claim in favor of the defendants, reserving the right to modify that conclusion if the changes proved to be form over substance. *Id.*

Initial Efforts to Comply with Judgment. Defendants' initial response to the Court's judgment was to transfer Mr. Anderson to the Sterling Correctional Facility and to declare that he would have an opportunity "to exercise for at least one hour, at least three times (normally five times) per week, in an outdoor area that includes overhead access to the elements." Defendant's Notice of Compliance with Final Order and Judgment, filed October 23, 2012 [ECF No. 118] at ¶4. In fact, this "opportunity" turned out to be placement in a 28 by 6 ½ foot concrete cell which, at one end, had a mesh ceiling and mesh walls above an eight-foot concrete base that permitted him to see the sky and be exposed to rain, snow and outdoor temperature. On September 4, 2013 the Court found that these exercise cells at Sterling were unacceptable as a permanent solution. Transcript [ECF No. 166] at 20-21.

With respect to the mental health issue, defendants had complied with the Court's order to have Mr. Anderson's situation evaluated by a new doctor. He had been prescribed the Ritalin that he had been seeking. However, the OMI program that the Court had found to offer adequate multidisciplinary mental health treatment had been discontinued and replaced by a new

3

"residential treatment program," which was not available at Sterling. Defendants insisted that adequate mental health treatment was available at Sterling, but that Mr. Anderson was refusing to accept it (and refusing to go to his exercise cell). *Id.* at 26. The Court indicated that it wanted to hear from the mental health professionals about whether the problem was Mr. Anderson's stubbornness or something else. *Id.* at 28.

The parties requested an opportunity to attempt to resolve their differences, and the Court ordered them to report back in 30 days. *Id.* at 28-29, 40-41. The parties later filed several motions for extensions of time to attempt to resolve their disputes. ECF Nos. 167, 170, 172, 174, 176. Finally plaintiff's filed the pending motion to enforce the judgment. ECF No. 178.

<u>Mr. Anderson's Present Situation</u>. Beginning in mid-July 2014 Mr. Anderson has been permitted to exercise in an open-air yard near his living unit, initially with three other inmates, later with seven other inmates. In a September 10, 2014 Declaration he states, "I very much enjoy the ability to be fully outdoors like this, and have not missed many if any opportunities to go to the yard. Earlier this week, I felt the rain on my face for the first time in 15 years. It was a remarkable experience." ECF No. 178-2 at ¶7.

Mr. Anderson also acknowledges that on June 13, 2014 a psychologist at the Sterling facility, Bryce C. Willson, PhD., put a treatment plan in place for him; that on July 30, 2014 defendants conducted a multi-disciplinary staff meeting; and that "I am able to interact with others and things are going smoothly because CDOC is, at this time, providing the mental health treatment I need and is allowing mental health staff to manage my situation as set forth in Exhibits A, B and C." *Id.* at ¶9-11.

In short, although it took longer to put the pieces in place than Mr. Anderson and this Court might have wished, plaintiff agrees that the outdoor exercise and mental health plan

4

implemented in mid-summer 2014 satisfy this Court's final order and judgment and the concerns the Court later expressed at the September 4, 2013 hearing. *See* Motion [ECF No. 178] at 7. Furthermore, neither he nor any other inmate is now in "administrative segregation."

<u>Plaintiff's present position</u>. The reason that the matter is before the Court is that Mr. Anderson and his lawyers are concerned that the CDOC might not continue to provide these services to him in the future. Plaintiff tenders a proposed form of order (which defendants have declined to endorse) that would amend this Court's final judgment to add the following:

> 1. Troy Anderson will have access for at least one hour, at least three times per week, to outdoor exercise in an area that is fully outside and that includes overhead access to the elements, *e.g.*, to sunlight, rain, snow and wind, unless inclement weather or disciplinary needs make that impossible.
>
> 2. While Mr. Anderson is housed in the "Cloverleaf" area of SCF, the outdoor exercise will be provided, pursuant to Paragraph 1 above, in one of the two open-air yards adjacent to Units 5 and 6.
>
> 3. If Mr. Anderson is transferred to another facility, outdoor exercise will be provided, pursuant to Paragraph 1 above, in an area with exposure to the elements that is equivalent to or greater than that of the yards referenced in Paragraph 2.
>
> 4. While classified as MCU, Mr. Anderson will be governed by AR 600-09, Exhibit 1 hereto. With respect to Plaintiff's conditions of confinement, canteen, and mental health treatment, Defendants will, at a minimum, comply with
>
>> a. the Level Review attached as Exhibit 2 hereto;
>>
>> b. the treatment plan attached as Exhibit 3 hereto;
>>
>> c. the Multidisciplinary Staffing attached as Exhibit 4 hereto;
>>
>> d. The list of programs and services attached as Exhibit 5 hereto;
>>
>> e. The MCU/MCUHR/MCUPC Orientation Sheet attached as Exhibit 6 hereto; and
>>
>> f. The canteen list attached as Exhibit 7 hereto.
>
> 5. With respect to review of his placement and the use of chronological records, Defendants will, at a minimum, comply with AR 550-01, Exhibit 8 hereto.

ECF No. 178-1 at 2-3. The proposed order has 59 pages of exhibits.

Plaintiff's argument is that his proposed order memorializes Mr. Anderson's current conditions of confinement and ensures that his access to outdoor exercise and adequate mental

health treatment will not be revoked after the case concludes. Brief [ECF No. 186] at 2. Plaintiff cites *Battle v. Anderson,* 708 F.2d 1523 (10th Cir. 1983, holding that "[t]he court must exercise supervisory power over the matter until it can say with assurance that the unconstitutional practices have been discontinued and that there is no reasonable expectation that unconstitutional practices will recur." *Id.* at 1538. Similarly, in *Longstreth v. Maynard,* 961 F.2d 895 (10th Cir. 1992) the court held that an injunction remained necessary until it became "absolutely clear that the allegedly wrongful behavior could not be expected to recur." *Id.* at 900-01.

Defendants' present position. Defendants respond that since the September 4, 2014 hearing the CDOC "has undertaken enormous changes in how it manages high-risk offenders." Response [ECF No. 185] at 1.  These changes include:

- Ending the use of indefinite long-term administrative segregation.

- Implementing Restrictive Housing Maximum Security at the Colorado State Penitentiary to manage the highest risk offenders.  Offenders are sent to Restrictive housing for periods no longer than 12 months and only if they have engaged in specific behaviors described in revised Administrative Regulation (AR) 650-03.[1]  CDOC is contemplating another revision to AR 650-3 so that offenders who have been in Restrictive Housing for more than nine months may have three hours of outdoor exercise in an area located off the existing gym area.

- Using Close Custody Transition Units at the Colorado State Penitentiary in which offenders may leave their cells for six hours per day to socialize with other offenders in

---

[1] AR 650-3 contains a matrix of behaviors that can result in a placement in Restrictive Housing, some for no more than six months (inciting a riot and possession of dangerous contraband or escape paraphernalia) and others for no more than 12 months (attempted, actual or complicit murder, manslaughter or kidnapping; assault on staff or an offender with intent to cause serious bodily injury; escape with force; engaging in a riot; rape; and arson). ECF No. 185-2 at 4. The regulation contains detailed provisions regarding the rights of inmates placed in Restrictive Housing and the process for progressing out before the expiration of the relevant period.

6

>  groups of 16 and participate in structured work, meals, educational programs, library, law library, and showers. They have access to indoor and outdoor exercise, including access to a gym with an attached outdoor courtyard once per week. Offenders do not stay in these units for more than six months.

- Using close custody Management Control Units, mostly at the Sterling facility, to facilitate the transition of high risk offenders from Restrictive Housing to general population. Offenders may leave their cells for four hours per day, socialize with other offenders in Day Halls in groups of eight, and utilize outdoor exercise areas. For example, in the Management Control Unit in which Mr. Anderson has been placed, inmates may have exercise in groups in an outdoor courtyard at least three times a week.

*Id.* at 2-13.

In support of their response defendants submit, among other things, excerpts from a deposition of Steve Hager taken on August 19, 2014, ECF No. 185-1. Mr. Hager is the Director of Prisons for the CDOC. Mr. Hager explained that these changes began in February 2011 when Tom Clements was the Executive Director of the CDOC and were studied for more than three years. They were implemented on June 30, 2014 in a revised form of AR 650-03. ECF No. 185-02. *See* deposition excerpts at 21-32, 54-56, 73-76, and 81-82. Inmates in a Maximum Control Unit at the Sterling facility, such as Mr. Anderson, have four hours every day out of their cell, including at least three hours per week of indoor or outdoor exercise in groups. *Id.* at 95.

Defendants also submit a Declaration by Mr. Hager. ECF No. 185-7. He indicates that, in addition to other duties, he supervises two Deputy Directors of Prisons who in turn supervise the wardens of 12 CDOC facilities. *Id.* at ¶¶ 3-5. He was involved in the drafting and implementation of the revised versions of AR 650-03 and AR 600-09 (concerning management

of close custody offenders), both of which became effective on June 30, 2014. *Id.* at ¶7. He again describes the termination of administrative segregation and the changes affecting high risk offenders. *Id.* at ¶¶ 14-37. The CDOC has also requested funding from the Colorado General Assembly to construct outdoor exercise areas at the Colorado State Penitentiary. *Id.* at ¶39.

Mr. Hager states that in the four months between the implementation of the revised AR 650-03 and his Declaration the average stay in Restrictive Housing was fewer than 10 months. *Id.* at ¶46. Those incarcerated in Restrictive Housing at the Colorado State Penitentiary for nine continuous months or more are being offered outdoor exercise in an outdoor area, and upon leaving Restrictive Housing they will be progressed to Management Control Units at Sterling (Mr. Anderson's present placement) pending construction and completion of the new recreation yards. *Id.* at 47-50. Mr. Hager describes at some length the features of the Management Control Units. *Id.* at ¶¶54-58.

Mr. Hager further declares that, while the CDOC will review its Administrative Regulations annually, the CDOC is committed to these changes in the philosophy of how to manage high risk offenders. *Id.* at ¶¶59-61. The CDOC "has no intention of disallowing access to the outdoor exercise areas at the Sterling Correctional Facility that the offenders in the MCU utilize for outdoor group exercise, nor can I even think of a reason for making that change." *Id.* at ¶62.

Defendants also submit excerpts from the deposition of Steve Martin taken on September 10, 2014. ECF No. 185-3. Mr. Martin was the plaintiff's corrections expert at the trial of this case. In this deposition he testified that he was aware of the changes implemented by the CDOC as of June 30, 2014. *Id.* at deposition p. 123. He takes Mr. Hager as "a man of his word and he's honest." *Id.* at 124. He perceives the changes as an end to indefinite, long-term administrative

8

segregation." *Id.* at 135.  The present approach to outdoor recreation is not, in Mr. Martin's opinion, a "per se constitutional violation." *Id.* at 151.  Even at the Colorado State Penitentiary, while Mr. Martin does not like the configuration, he agrees that an opportunity for outdoor exercise that meets basic human needs is now being provided. *Id.* at 159-60.

## ANALYSIS

To begin, one must remember that this case is not a class action.  Mr. Anderson sought equitable relief addressing his lack of access to outdoor exercise, his allegedly inadequate mental health treatment, and the chronological reporting system that had kept him from progressing out of administrative segregation.  The Court's final order and judgment supported Mr. Anderson's claims as to outdoor exercise.  It did not, with the exception of ordering a fresh look at his mental health treatment by a doctor without previous contact with him, agree with his mental health claim.  Likewise, primarily because significant changes were being made to the chronological reporting system while the trial was in progress, the Court did not sustain his claim regarding that system.

Although it took a while, the Court's orders have been implemented and then some. Since mid-July 2014 Mr. Anderson has been permitted a quantity and quality of outdoor exercise that is satisfactory to him.  He has been prescribed the medication he sought for his mental illness, and he is receiving acceptable, multidisciplinary mental health treatment.  He has progressed out of administrative segregation.  Overall, he and his lawyers appear to be happy with his present situation.

Moreover, there appears to have been something of a sea change in the way in which the CDOC manages high risk offenders, extending far beyond Mr. Anderson's individual situation. Those changes began under Tom Clements, an enlightened and effective Executive Director.

After the tragic murder of Mr. Clements, the direction of the CDOC has continued under Executive Director Rick Raemisch. I have more than once expressed my confidence in what I have seen from Mr. Clements and Mr. Raemisch. Defendants argue that "[t]he CDOC has 'turned the Titanic around' and has no intention of changing course." Response [ECF No. 185] at 16. Like plaintiff's expert Mr. Martin, I have no reason to doubt the honesty or good faith of Mr. Hager when he relates that the CDOC is committed to these changes of philosophy, and that with respect to outdoor exercise in particular, he can think of no reason to make a change.

As a practical matter, the good faith of strong leaders who "put their money where their mouth is" may be a better guarantor of future conditions than a court order. In any event, it does not seem to me that the way to acknowledge the progressive changes implemented by the CDOC is to place the Department under permanent court supervision. This Court finds after a review of the briefs, deposition testimony, declarations and other materials, that the unconstitutional practices that were the subject of the Court's final order and judgment issued August 24, 2012 have been discontinued, and that there is no reason to expect that they will recur. *See Battle,* 708 F.2d at 1538; *Longstreth,* 961 F.2d at 900-01.

Further, the Prison Litigation Reform Act provides that prospective relief with respect to prison conditions "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). This Court does not find it to be necessary to provide further prospective relief in order to correct the violation of Mr. Anderson's rights under the Eighth Amendment. The Court likewise does not find that a hearing on an order to show cause is necessary. If, contrary to my expectation, the CDOC without good cause changes direction to Mr. Anderson's detriment, he will not be without options.

## ORDER

Plaintiff's motion for enforcement of judgment or a hearing on an order to show cause [ECF No. 178] is denied.

DATED this 7th day of April, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge